UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHADRICK VASHON PRAY,

        Plaintiff,

v.                                      Case No. 3:16-cv-180-J-34JBT

NURSE POLLARD,
et al.,

        Defendants.

**ORDER**

**I. Status**

Plaintiff Chadrick Vashon Pray, an inmate of the Florida penal system, initiated this action on February 24, 2016, by filing a Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. He filed an Amended Complaint (Doc. 11) on May 16, 2016, a Second Amended Complaint (Doc. 20) on September 29, 2016, and a Third Amended Complaint (TAC; Doc. 30) on March 27, 2017. In the TAC, Pray names the following Defendants: (1) Olugbenga Adeleke Ogunsanwo;[1] (2) Nurse Pollard, a licensed practical nurse at Florida State Prison (FSP); (3) Nurse D. Varghese, an advanced registered nurse practitioner at FSP; and (4) John Does 1 through 5. He asserts that Defendants Pollard and Varghese denied him pain medication (Lortab) that Dr. Contarini, M.D., prescribed for him

---

[1] The Court granted Ogunsanwo's Motion to Dismiss (Doc. 36), and dismissed him from the action on March 6, 2018. See Order (Doc. 57).

after the removal of a lipoma on August 2, 2016. He seeks declaratory relief and monetary damages.

This matter is before the Court on Defendants Nurse Pollard and Nurse Varghese's Motion to Dismiss Third Amended Complaint With Prejudice (Motion; Doc. 74), filed August 21, 2018, with exhibits (Def. Ex.). The Court advised Pray that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond. See Orders (Doc. 34, 70, 75, 83). Plaintiff filed his response in opposition to the Motion. See Plaintiff's Response to Court Order to Show Cause and Motion in Response to Defendants Pollard and Varghese's Motion to Dismiss (Response; Doc. 84). Defendants' Motion is ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while

2

"[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[2] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

---

[2] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

**III. Third Amended Complaint**[3]

Pray asserts that, on August 2, 2016, Dr. Contarini removed a lipoma from his neck and prescribed Lortab for post-surgical pain. See TAC at 10-11, ¶¶ 57, 58. He states that Defendants Pollard and Varghese interfered with Dr. Contarini's prescribed treatment. See id. at 11, ¶ 59. He alleges:

> On August 2, 2016 Defendant Pollard and Defendant Var[g]hese intentionally denied and interfered with prescribed treatment of pain medication, i.e. "Lortab," b[y] discontinuing the medication and never providing it to [him] as prescribed by Dr. Contarini, M.D.

Id.

**IV. Summary of the Arguments**

In the Motion, Defendants Pollard and Varghese assert that the Court should dismiss the case with prejudice because: (1) Pray failed to disclose prior lawsuits that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, see Motion at 3, 5-6, and (2) Pray seeks to circumvent the three-strikes provision of the

---

[3] The TAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the TAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the TAC and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on a motion to dismiss filed by Pollard and Varghese, the Court's recitation of the facts will focus on Pray's allegations as to these Defendants.

Prison Litigation Reform Act (PLRA), and therefore is barred from bringing the instant lawsuit under 28 U.S.C. § 1915(g), see id. at 7. Defendants also state that (1) Pray failed to exhaust his administrative remedies, as required by the PLRA, before filing the instant 42 U.S.C. § 1983 lawsuit, see id. at 7-9; (2) Pray's assertions against them do not constitute deliberate indifference to a serious medical need, see id. at 9-10; (3) Defendants are entitled to qualified immunity, see id. at 10-11; (4) the Eleventh Amendment bars Pray's claims for monetary damages against them in their official capacities, see id. at 11; and (5) Pray fails to assert that he suffered any physical injuries as a result of Defendants' acts and/or omissions, see id. at 11-12.

In response to Defendants' Motion, Pray maintains that (1) he did not have three strikes against him at the time he filed his Complaint, see Response at 2; (2) he is "without knowledge" as to Defendants' exhaustion argument, and therefore denies the assertion, id.; (3) he sufficiently states an Eighth Amendment claim of deliberate indifference to a serious medical need, see id.; (4) Defendants are not entitled to qualified immunity, see id. at 3; (5) the Eleventh Amendment does not bar his claims against the Defendants in their individual capacities, see id.; and (6) Defendants' discontinuation of pain medication caused an infection which he can prove if permitted to engage in adequate discovery,

see id. at 4. As such, Pray requests that the Court deny Defendants' Motion. See id.

## V. Discussion

### A. PLRA's Three Strikes Provision

The PLRA amended 28 U.S.C. § 1915 by adding the following subsection:

> (g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Section 1915(g), commonly referred to as the "three strikes" provision, requires this Court to consider prisoner actions dismissed before, as well as after, the enactment of the PLRA.

Defendants assert that Pray failed to disclose prior lawsuits or appeals in federal court that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. See Motion at 3. Pray maintains that he was not a three-strikes litigant when he initiated the lawsuit on February 24, 2016. See Response at 2. In the TAC, Pray acknowledges that he initiated other lawsuits in federal court dealing with the same or similar facts involved in this action or otherwise relating to his

7

imprisonment or conditions of confinement. See TAC at 2. He maintains that he does not know whether any of the prior federal lawsuits or appeals are qualifying dismissals under § 1915(g). See id. at 2-3.

The Court takes judicial notice of filings previously brought by Pray in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted: (1) 2:09-cv-14403 (Southern District of Florida; dismissed for failure to state a claim on January 28, 2010), and (2) 0:10-cv-10991 (United States Court of Appeals for the Eleventh Circuit; dismissed the appeal as frivolous on July 21, 2010). See Motion at 3; Def. Ex. A. Defendants also maintain that case number 3:17-cv-65-25MCR is a prior qualifying dismissal. See Motion at 3. However, the Court dismissed that case on January 25, 2017, well after Pray initiated this lawsuit on February 24, 2016. Moreover, Defendants' reliance on the Southern District Court's dismissal,[4] see id. at 4, 7, is misplaced because that case was dismissed on June 26, 2018, also well after Pray

---

[4] In June 2018, the Southern District Court determined that Pray had three prior qualifying dismissals, and that his allegations did not warrant the imminent danger exception to dismissal, and therefore, dismissed the case under 28 U.S.C. § 1915(g). See Def. Ex. A, case no. 0:18-cv-61228. The Court stated that he is barred from proceeding in forma pauperis in federal court under 28 U.S.C. § 1915(g) unless he can show that he was under imminent danger of serious physical injury at the time he filed his complaint. See id.

initiated this lawsuit. Given the record, Defendants' Motion is due to be denied because they have shown neither an abuse of the judicial process nor the requisite showing under 28 U.S.C. § 1915(g).

## B. Exhaustion of Administrative Remedies

### 1. Exhaustion under the PLRA

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Pray is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to

> adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

> Turner, 541 F.3d at 1081.[6] In Turner v.
> Burnside we established a two-step process for
> resolving motions to dismiss prisoner lawsuits
> for failure to exhaust. 541 F.3d at 1082.
> First, district courts look to the factual
> allegations in the motion to dismiss and those
> in the prisoner's response and accept the
> prisoner's view of the facts as true. The
> court should dismiss if the facts as stated by
> the prisoner show a failure to exhaust. Id.
> Second, if dismissal is not warranted on the
> prisoner's view of the facts, the court makes
> specific findings to resolve disputes of fact,
> and should dismiss if, based on those
> findings, defendants have shown a failure to
> exhaust. Id. at 1082–83; see also id. at 1082
> (explaining that defendants bear the burden of
> showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

**2. Exhaustion under Florida's Prison Grievance Procedure**

The Florida Department of Corrections (FDOC) provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not

---

[6] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. <u>See</u> FLA. ADMIN. CODE r. 33-103.007.

However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the Secretary of the FDOC by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6)(a). In a direct grievance to the Secretary, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE r. 33-103.007(6)(a)2. If the Secretary determines that the grievance does not qualify as one of the types of direct grievances described in the rule, the grievance must be returned to the inmate, stating the reasons for its return and advising the inmate to resubmit the grievance at the appropriate level. <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6)(d). If the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file

with the Secretary if he is not satisfied with the response. See FLA. ADMIN. CODE r. 33-103.007(7).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits are applicable. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). Additionally, Rule 33-103.011(4) provides:

> The time limit for responding to grievances and appeals may be extended for a reasonable period agreeable to both parties if the extension is agreed to in writing by the inmate. Unless the grievant has agreed in writing to an extension, expiration of a time limit at any step in the process shall entitle the complainant to proceed to the next step of the grievance process. If this occurs, the complainant must clearly indicate this fact when filing at the next step. If the inmate does not agree to an extension of time at the central office level of review, he shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies. The Bureau of Policy Management and Inmate Appeals will nevertheless ensure that the grievance is investigated and responded to even though an extension has not been agreed to by the inmate.

FLA. ADMIN. CODE r. 33-103.011(4).

According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(x). Some of the reasons for returning a grievance are as follows: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or "used more than two (2) additional narrative pages." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (q), (t).

### 3. Pray's Exhaustion Efforts

Defendants maintain that Pray failed to exhaust his administrative remedies, as required by the PLRA, before filing the 42 U.S.C. § 1983 lawsuit. See Motion at 7-9. In support of this contention, they submit Pray's grievances for the relevant time

14

period, see Def. Ex. B, and assert that Pray failed to submit any grievances relating to the medical condition at issue (the lipoma), or the lack of post-surgical pain medication, see Motion at 8. They also state that he neither submitted grievances addressed to them nor identified them in any grievances. See id. at 9. In response to Defendants' Motion, Pray simply states that he is "without knowledge" as to Defendants' exhaustion argument, and therefore denies their assertions. See Response at 2.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> District courts first should compare the factual allegations in the motion to dismiss and those in the prisoner's response and, where there is a conflict, accept the prisoner's view of the facts as true. "The court should dismiss if the facts as stated by the prisoner show a failure to exhaust." Id.[7]

Pavao, 679 F. App'x at 823-24. Here, accepting Pray's view of the facts as true, a dismissal is warranted. In the TAC, Pray describes multiple grievances spanning from June 2014 through July 2016. See TAC at 8-10. Notably, Pray's litany ends with the FDOC Central Office's return of his appeal on July 26, 2016. See id. at 10. Pray failed to exhaust the prison's available administrative remedies as to his claims against Defendants Pollard and Varghese which he asserts began no earlier than August 2, 2016. See id. at 11.

---

[7] Whatley, 802 F.3d at 1209.

15

Indeed, Pray failed to submit any grievances related to his assertion that Pollard and Varghese discontinued the pain medication on August 2, 2016, after Dr. Contarini's removal of the lipoma. See Def. Ex. B; see also TAC at 8-11. As such, Defendants' Motion as to Plaintiff's claims against them for failure to exhaust is due to be granted.[8]

### C. John Does

For over nine months, the Court directed Pray to identify Defendants John Does 1-5. See Orders (Docs. 58, 70, 75). Most recently, the Court directed Pray to file a notice by December 20, 2018, with information for service of process on Does 1-5, or, alternatively, file a motion to voluntarily dismiss them. See Order (Doc. 82), filed November 7, 2018, at 4, ¶3. As of the date of this Order, Pray has not responded to the Court's November 7, 2018 Order. Therefore, the Court finds it appropriate at this time to dismiss Does 1-5 for Pray's failure to prosecute the case against them. Alternatively, due to Pray's failure to exhaust the prison's administrative remedies, the Court could dismiss the case against

---

[8] Defendants also assert that Pray fails to state a claim upon which relief may be granted, and they are entitled to qualified and Eleventh Amendment immunities. See Motion at 9-11. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Therefore, the Court will not address Defendants' other arguments since Pray's claims against them are due to be dismissed for Pray's failure to exhaust.

them on that basis as well. Nevertheless, in an abundance of caution, the Court will dismiss the case against them without prejudice.

Therefore, it is now

**ORDERED**:

1. Defendants Pollard and Varghese's Motion to Dismiss (Doc. 74) is **PARTIALLY GRANTED** as to Pray's claims against them for his failure to exhaust. Otherwise, the Motion is **DENIED**. The Clerk must terminate Defendants Pollard and Varghese as Defendants.

2. Defendants John Does 1 through 5 are **DISMISSED** without prejudice for Plaintiff's failure to prosecute the case against them.

3. The Clerk shall terminate any pending motions and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of January, 2019.

MARCIA MORALES HOWARD
United States District Judge

sc 1/2
c:
Chadrick Vashon Pray, FDOC #777541
Counsel of Record